322 So.2d 139 (1975)
Mrs. Beverly H. TOWNSEND
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, et al.
No. 56247.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*140 William E. Syke, Alexandria, for plaintiff-applicant.
John F. Simon, Gold, Hall, Hammill & Little, Alexandria, for La. Paving Co., Inc.
William J. Doran, Jr., Sp. Asst. to Gen. Counsel, La. Dept. of Highways and Philip K. Jones, Norman L. Sisson, Robert J. Jones, Doran & Kivett, Baton Rouge, for Dept. of Highways.
Howard N. Nugent, Jr., Ford & Nugent, Alexandria, for City of Alexandria.
MARCUS, Justice.
Mrs. Beverly H. Townsend, as natural tutrix of her minor son, Rory I. Vanderlick, instituted this suit to recover damages for personal injuries sustained by her son when he fell from his bicycle while riding on Jackson Street Extension in the City of Alexandria, Louisiana. Defendants are the State of Louisiana, through the Department of Highways, Louisiana Paving Company, Inc., and the City of Alexandria. The trial court rendered judgment for defendants, rejecting plaintiff's demands. On appeal, the judgment was affirmed. 309 So.2d 887 (La.App. 3rd Cir. 1975). Upon plaintiff's application, we granted certiorari. 313 So.2d 600 (La.1975).

FACTS
The accident occurred at 4:30 in the afternoon on July 31, 1972 on Jackson Street Extension which is a concrete 4-lane street 47 feet wide. Drainage catch basins are located at various points on that street adjacent to the curbs. At the time of the accident, Rory Vanderlick, age 14, was riding his bicycle on the right-hand side of said roadway in the same direction as traffic. His friend, Julie Betar, was riding another bicycle immediately behind him. They were returning from getting a sno-cone. The weather was clear and dry. When Rory rode over one of these drainage catch basins in the street, he suddenly fell or was thrown forward over the front of his bicycle and sustained injuries which form the basis of this suit.
The drainage catch basin at the site of the accident consisted of a rectangularshaped concrete opening 4 feet long and 12 inches wide, which opening was covered with a cast iron grate. The grate fit into the opening and created a surface level with the street. The grate was 10 7/8 inches wide. Thus, the width of the grate was 1 1/8 inches narrower than the width of the concrete opening. There was nothing to hold the grate rigidly in place over the concrete opening; therefore, it could move a maximum of 1 1/8 inches toward or away from the curb. If it moved as far as possible toward the curb, it would leave a space between the edge of the grate and the rim of the concrete opening on the *141 street side of as much as 1 1/8 inches. Actual measurements taken at the particular catch basin located at the site of the accident indicated that, while the concrete opening was 12 inches wide at one end, it was 12¼ inches wide at the other end. If the grate on that basin had moved as far as possible toward the curb, it is conceivable that the space between the edge of the grate and the rim of the concrete opening on the street side would be as much as 1 3/8 inches at one point. The grate had a total of 20 openings. Each of these slots was rectangular in shape and was 1 1/8 inches wide and about 11 inches long. The slots ran lengthwise on the grate, parallel to each other, and about an inch apart.
Rory was riding a Kabuki 10-speed bicycle. The tires on this foreign-made racing bicycle were small and narrow. They are less than 1 1/8 inches wide and would easily drop into any one of the slots or spaces in the catch basin grate. If the wheel of Rory's bicycle dropped into one of the slots in the grate, the wheel would sink only a few inches below the surface of the street because each slot was only 11 inches wide and separated by iron crossbars. However, if the wheel dropped into the space between the edge of the grate and the rim of the opening on the street side, the wheel conceivably could sink down to its hub because that opening ran the full length of the catch basin.

PLAINTIFF'S CONTENTIONS
Plaintiff contends that the grate had shifted as far as it would go toward the curb, leaving a space 1 3/8 inches between the edge of the grate and the rim of the concrete opening on the street side and that the front wheel of her son's bicycle fell into that space. Negligence is alleged on the part of the Highway Department in its design of the grate which could move and leave an opening that was dangerous to bicycle riders; on the part of Louisiana Paving Company in failing to construct the catch basin in accordance with the plans and specifications of the Highway Department; and also on the part of the City of Alexandria for failing to maintain the street in a safe condition.

ISSUES
The issues to be resolved in this litigation are: (1) whether the negligence, if any, of any of the named defendants was a proximate cause of the accident; and (2) if so, whether the negligence, if any, of Rory Vanderlick was a proximate cause of the accident thereby barring plaintiff's claim for recovery by her son's contributory negligence regardless of any fault on the part of defendants.

I.
We will assume for the sake of argument that defendants were negligent in contributing to the creation of a dangerous condition to bicycle riders caused by the existence of an opening 1 3/8 inches wide and 4 feet long between the edge of the grate and the rim of the concrete opening on the street side into which a bicycle wheel could fall. We make this assumption of negligence in order that we might first address ourselves to the issue of causation.
It is well settled that the plaintiff has the burden of proving causation by a preponderance of the evidence. It is only necessary that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Perkins v. Texas & New Orleans Railroad Company, 243 La. 829, 147 So.2d 646 (1962). This burden of proof may be satisfied by direct or circumstantial evidence. Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La. 1973); Jordan v. Travelers Insurance Company, supra; Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963). It suffices if the circumstantial evidence excludes other reasonable hypotheses only with a fair amount of certainty *142 so that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972), on rehearing.
Rory and his companion were riding their bicycles at a relatively fast speed as they approached the catch basin. Rory stated they were riding "a little above medium" speed, and they "were not going slow." Julie stated that they "were going fast," and she estimated their speed at about 15 to 20 miles per hour. Rory does not remember anything about the accident and was unable to state whether he ran his bicycle over the grate, or whether the catch basin or grate had anything to do with his mishap. Julie was also unable to state how the accident occurred. She stated: "I just saw Rory flip over his bike, that's all," and that she does not know "whether he ran over the drain grate, whether he ran over a hole, or what happened." She also stated that Rory's bike fell on the street near the catch basin, that "the bike did fall down" and that "I don't remember if it fell . . . exactly on the grate or anything." Both Rory and Julie testified that the traffic was heavy at the time. According to Rory, he did not recall whether or not he had applied his brakes on the date of the accident. He stated that normally he rides his bicycle with his hands on the middle of the handlebars, not on the curved portion where the handles and the braking mechanism are located. He admitted that holding his hands in this position would require him to move them in order to apply his brakes. Rory also testified that, although he was supposed to wear glasses (his license to drive being so restricted), he did not have his glasses on at the time of the accident. Rory's mother testified that she rode a bicycle over this grate several weeks after the accident and that the tire, similar to that of Rory's bicycle, did not stick in the grate portion because of the iron crossbars. However, she testified that the riding over these bars was "bumpy." Likewise, the photographs in the record clearly indicate that the tire of the bicycle wheel would fit through the openings in the grate up to the wheel rim.
In the present case, plaintiff has failed to sustain the burden of proving causation by a preponderance of the evidence. Neither of the eyewitnesses, Julie nor Rory, could testify that Rory's wheel did in fact fall or get caught in the opening between the edge of the grate and the rim of the concrete opening. While this is a possible cause of the accident under the circumstances, it is just as possible that the accident was caused by the "bumping" created by the tires going in and out of the openings on the grate, coupled with the fast speed of the bicycle. Other evidence that lends support to this latter possibility is the fact that Rory would have had to move his hands in order to apply his brakes. Likewise, any sudden braking under these circumstances would have contributed to his losing control. Therefore, any one of these possibilities might have caused Rory to fall from his bicycle. Since the circumstantial proof does not exclude the other reasonable hypotheses with a fair amount of certainty, we are unable to conclude that it is more probable than not that the accident was caused by the wheel of Rory's bicycle falling into the opening between the edge of the grate and rim of the concrete opening.

CONCLUSION
Having found that plaintiff failed to prove causation, we need not decide whether any of the named defendants were negligent nor do we reach the issue of Rory's possible contributory negligence. Accordingly, we conclude that plaintiff's suit was properly dismissed by the courts below.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON and CALOGERO, JJ., dissent.