422 So.2d 199 (1982)
Franklin E. WILLIAMS
v.
Joshua GRIFFIN, Sr., Union Carbide Corporation and Kemper Insurance Company.
No. 13252.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
Writ Denied December 20, 1982.
Clark A. Richard, Edward R. Drury, New Orleans, for plaintiff.
Dominic J. Gianna, Hammett, Leake & Hammett, New Orleans, for defendant.
Before REDMANN, GULOTTA and SCHOTT, JJ.
GULOTTA, Judge.
In this truck-automobile accident case, Franklin E. Williams appeals the dismissal of his damage suit on a jury finding that the defendant driver, Joshua Griffin, Sr., was not negligent. We affirm.
The unwitnessed accident occurred at approximately 2:30 a.m. on December 13, 1974, at the intersection of Chef Menteur Highway and Lurline Street in New Orleans. At the scene, Chef Menteur is a fourlane divided highway with two eastbound lanes, each 12 ft. wide, separated from the two westbound lanes by a median measuring *200 16 ft. in width. There is a 35 ft. wide break in the median where Lurline, which runs from a North-South direction, intersects with the northern edge of Chef Menteur, forming a "T" intersection.
Plaintiff's version of the accident is that he was traveling eastbound in the left lane of Chef Menteur and attempting to pass defendant's "18-wheeler" tractor-trailer rig traveling eastbound in the right, shoulder lane when defendant, without warning, made a "sharp" left turn into the Lurline intersection across plaintiff's path. Plaintiff slammed on his brakes but skidded unavoidably into the left side of defendant's trailer at the rear tandem wheels.
Defendant's version, on the other hand, is that before reaching the Lurline intersection to make a U-turn onto Chef Menteur he had moved his rig entirely into the left, median lane after activating his left turn signal and checking for following traffic. According to the defendant truck-driver, while moving "almost at a crawl", the tractor portion of his rig had nearly reached the westbound lane of Chef Menteur, and his trailer was on an angle in the left lane when plaintiff's vehicle struck him.
Plaintiff, appealing, contends the jury's failure to find defendant negligent was manifestly erroneous and contrary to the preponderance of the evidence. Plaintiff points out that defendant's uncorroborated version of the accident is "impossible" and "not worthy of belief" in light of the physical evidence.
Plaintiff further contends the trial judge erred in the jury instructions. Specifically, plaintiff argues the trial judge erroneously instructed the jury that a following motorist has a duty to exercise "extraordinary" rather than "reasonable" care. He further points out that the judge's instruction concerning rear-end collisions was not applicable since plaintiff had failed to prove a rear-end collision occurred in this case.

DEFENDANT DRIVER'S NEGLIGENCE
We find no merit to plaintiff's contention that the jury manifestly erred in finding the defendant guilty of negligence.
In support of his arguments that the defendant's version of the accident was "incredible", plaintiff relies on the testimony of an investigating police officer who arrived on the scene minutes after the impact. He found the "nose" of defendant's tractor "at the edge of the neutral ground closer to Lurline Street" with the rear-end of the trailer straddling both eastbound lanes of Chef Menteur. Plaintiff's overturned car was next to the cab of the tractor and facing south on Lurline with damage to its right front. The forward pair of the four rear tandem wheels on the left side of the defendant's trailer had been struck.[1]
The investigating officer found 40 ft. skid marks from plaintiff's car in the left, eastbound lane of Chef Menteur. Although he did not note any skid marks from the trailer, he found a trailer tire "imprint" straddling both eastbound lanes. This witness estimated the point of impact to be slightly to the right of the center of the left eastbound lane. The defendant was given a ticket for making an improper left turn.
Plaintiff's accident reconstruction expert, John F. Exnicious, Sr., testified that a tractor-trailer rig of defendant's size could not make a U-turn on Chef Menteur highway at the Lurline opening in the median without leaving the travelled portion of the highway, since the minimum turning radius of the rig required an 80 ft. diameter to complete the turn. According to this expert, if the defendant driver had started his turn from the left lane as claimed, he would have completed the turn 28 ft. off the roadway in a westbound direction. Based on the skid marks and damage to the vehicles, this witness was of the opinion that the defendant had made a left turn from the right, shoulder lane of Chef Menteur across plaintiff's path in the left lane.
*201 In contrast to the above testimony, the defendant driver asserted that all of his trailer was completely in the left lane of Chef Menteur as he approached Lurline to make his U-turn. He stated that he had turned his steering wheel all the way to the left and the tractor portion of his rig was at a 35° angle from the trailer and had nearly reached the westbound lanes of Chef Menteur when he heard a "bump" and looked down to see plaintiff's car turning over. Joshua Griffin testified that because he was carrying liquid oxygen he feared a fire might be ignited from plaintiff's overturned vehicle. Because of this fear, following impact, he backed his rig several feet. According to Griffin, when he backed his rig the damaged wheel on his trailer left the tire imprint noted by the investigating police officer and his trailer came to rest across both eastbound lanes of Chef Menteur. Defendant Griffin, a tractor-trailer driver with 33 years experience, further testified that he had previously made Uturns from Chef Menteur at the Lurline intersection from the left lane and that normally the front of his tractor "takes up" some of the shoulder of the road in making the turn. He further testified that he had paid the ticket issued to him "to save time and money."
We do not quarrel with the rule cited by plaintiff that conflicting, irreconcilable testimony must be examined in light of the surrounding physical facts.[2] Nonetheless, when we consider the evidence in the instant case, we cannot say defendant's version of the accident is inherently "incredible" or contrary to the evidence at the accident scene. If the jury believed defendant driver's explanation that he moved his rig after impact to avoid possible fire, it undoubtedly placed less weight on the opinions of plaintiff's witnesses concerning the point of impact and the circumstances of the accident.
Moreover, although plaintiff's testimony that he skidded in a straight line in the left lane finds some support in the skid marks at the scene, his testimony differed from his earlier disposition where he had stated that he "put on his brakes and tried to avoid him [the defendant] to the left into the median." Plaintiff's deposition supports a point of impact farther to the left and is consistent with defendant's version. The jury might well have placed more emphasis on plaintiff's deposition than his testimony at trial.
Furthermore, plaintiff's expert's testimony concerning the turning radius of defendant's vehicle does not destroy defendant's version. This expert testified that a U-turn could be completed from the left lane of Chef Menteur, although the trailer would of necessity leave the travelled portion of the highway. This testimony was not inconsistent with the defendant's prior experience of making the U-turn from the left lane using the westbound shoulder to complete the turn. Under the circumstances, we find no manifest error in the jury's exoneration of the defendant driver from negligence.
Even assuming arguendo the jury erred, we point out that no reversal is warranted since there is ample evidence in the record to support a finding by this court that plaintiff was guilty of contributory negligence. It is undisputed the truck was traveling at 15 mph prior to the accident while plaintiff's car was traveling at the 45 mph speed limit. The defendant driver testified that he had activated his left-turn signal and that it was impossible to turn the wheels of this large tractor-trailer rig "hard" or "spin it around" under the circumstances. Despite the duty of a left turning motorist to exercise caution, a reasonable conclusion might be made that plaintiff was negligent in failing to reduce his speed or that he was traveling at a greater speed than indicated by his testimony. Moreover, plaintiff admittedly had consumed two alcoholic drinks before the accident, and there were empty alcoholic beverage bottles in his car. Accordingly, there is evidence that plaintiff's judgment *202 or reflexes might have been impaired at the time of the accident.

JURY INSTRUCTION
We likewise reject plaintiff's argument that improper instructions by the trial judge led to an erroneous verdict. The objectionable instructions were as follows:
"I charge you that a duty of a motorist to look includes the obligation of observing what one should or could observe by the exercise of ordinary kind of reasonable care. I charge you there's a rule when a following vehicle collides with the rear of a leading vehicle. The following motorist has a duty to keep his vehicle under control and to respect the forward motorist's announced intention to stop or turn.
The law imposes on a following motorist duty to exercise great care, sometimes referred to as extraordinary care."
Plaintiff contends this erroneous and irrelevant instruction misled the jury to direct a judgment against plaintiff despite the overwhelming preponderance of this evidence.
Assuming, without holding, that the objectionable charge was erroneous, it is clear that the instruction complained of concerns plaintiff's contributory negligence. The jury specifically answered, "No" to the first interrogatory: "Was the defendant, Joshua Griffin, Sr., the driver of the tractor-trailer owned by Union Carbide, guilty of negligence, and was his negligence the proximate cause of the accident?" Having exonerated Griffin from liability, the jury did not reach the second interrogatory concerning plaintiff's contributory negligence, and thus had no reason to be influenced by the complained of instructions concerning rearend collisions and the duty of a following motorist. Under these circumstances, the issue raised by plaintiff concerning the objectionable instructions takes on little or no importance, and there is no necessity to consider the merits of this complaint of error.
We note further that a proper instruction was given concerning the defendant-driver's duty of care as a left-turning motorist, and that the complained-of instructions were given after instructions on contributory negligence and multiple proximate causes of injury. Under the circumstances, we do not conclude that the instructions in any way misled the jury in its deliberations concerning the defendant driver's negligence.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Defendant's tractor has two front wheels and a rear pair of tandem axles with four wheels on each side. The trailer has a pair of tandem axles towards the rear with four wheels on each side, giving the rig a total of 18 wheels.
[2] See Oppenheim v. Toye Bros. Yellow Cab Co., 7 So.2d 420 (La.App. Orleans, 1942); Hollins v. Jefferson Oil Company, 124 So.2d 629 (La.App. 3rd Cir.1960); Avis Rent-a-Car System, Inc. v. Berthiaume, 188 So.2d 105 (La.App. 1st Cir.1966).